# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES M. JONES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 17-cv-569-JPG-CJP |
| COMMISSIONER of SOCIAL SECURITY, | ) ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM AND ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Charles M. Jones, represented by counsel, seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Mr. Jones applied for disability benefits in August 2013, a few months after a previous application had been denied. He originally alleged disability as of August 1, 2012. He later amended the alleged onset date to October 6, 2015: his 50th birthday.

After holding an evidentiary hearing, ALJ Thomas Auble denied the application on June 27, 2016. (Tr. 13-22.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Plaintiff's Arguments

Plaintiff makes the following arguments:

1. The ALJ failed to properly consider medical evidence from 2015 and 2016

regarding plaintiff's back condition and failed to properly consider his moderate, multilevel degeneration of the lumbar spine, compression fractures, and stenosis.

2. The ALJ should have obtained an updated consultative exam rather than relying on an exam from 2013 and should have obtained current RFC assessments.

### **Legal Standards**

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.[1]

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment,

---

[1] The legal standards for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) are largely the same. The above paragraph in this order cites the relevant statutory provisions for DIB, while the SSI provisions are located at 42 U.S.C. §§ 1382c(a)(3)(A), 1382c(a)(3)(D), and 20 C.F.R. § 416.972. Most citations herein are to the DIB regulations out of convenience, but also apply to SSI challenges.

but the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### **The ALJ's Decision**

ALJ Auble followed the five-step analytical framework described above. He determined that Mr. Jones had not worked at the level of substantial gainful activity since the alleged onset

date. He found that plaintiff had severe impairments of degenerative disc disease and migraine headaches.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level with some physical limitations. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff was not disabled because he was able to do jobs which exist in significant numbers in the national and regional economies.

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the plaintiff's arguments.

### 1. Agency Forms

According to plaintiff, he stopped working in 2004 because he "got beat up." He worked as a detailer at a car wash from 2001 to 2004. He had an eleventh grade education. (Tr. 170-171.)

Plaintiff reported that he was unable to work because of back problems/spasms, strain, migraine headaches from a head injury, and neck problems. (Tr. 179.) In November 2013, he said that his brain injury "is the worst part of my disability." He said he had blurry vision and severe headaches which caused him to black out. His back problems were getting worse. (Tr. 204.)

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in April 2016. The ALJ noted that plaintiff had amended his alleged date of disability to October 6, 2015. (Tr. 29.)

Plaintiff testified that he did not have an injury to his lower back. Nevertheless, he testified that he had lower back pain that built up over time and started really bothering him in 2011. He said he could not work because he was "on pills" and had lower back pain. He was taking prescription-strength ibuprofen and Tramadol, but they did not relieve his pain. He had no side effects. (Tr. 43-44.) Upon questioning by his attorney, plaintiff testified that his medication made him drowsy. (Tr. 52.)

Plaintiff injured his head in a fall. (Tr. 42-43.) He also "jammed" his neck in the fall and had "minor headaches." (Tr. 46-47.)

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical question which corresponded to the ultimate RFC findings. The ALJ noted that plaintiff had no past relevant work. The VE testified that plaintiff could work in jobs such as a housekeeper, machine tender, and small laundry worker. (Tr. 57-59.)

### 3. Medical Records

In December 2012, Mr. Jones began receiving primary health care at Grace Hill/Murphy O'Fallon Health Center. He was treated for low back pain and high blood pressure. On exam, he had tenderness in the lower back and a limited range of motion. (Tr. 318-320.)

Plaintiff saw a different primary care physician, Dr. Albarcha, on January 31, 2013. He complained of lower back pain and high blood pressure. Dr. Albarcha prescribed blood pressure medication. (Tr. 301-302.)

Plaintiff went to the emergency room for lower back pain in February 2013. He reported that he was turning at work and felt a pop in his low back. On exam, he had muscle spasms in the low back. (Tr. 252-253.) X-rays of the lumbar spine showed multilevel minor lumbar

spondylosis. Vertebral body heights and intervertebral disc spaces were well preserved. (Tr. 282.) The diagnosis was acute low back pain, muscle strain, and chronic hypertension. His blood pressure was very high. He said he did not have a primary care physician, so a referral was made. (Tr. 274.)

A few days later, plaintiff returned to Dr. Albarcha complaining of back pain and headache. (Tr. 309.)

Plaintiff was seen at St. Louis University Medical Center on April 7, 2013. He had fallen and had a laceration to the right scalp. A CT scan of the lumbar spine showed "age-indeterminate" compression deformities at L1 through L5, most pronounced at L2. There were also mild to moderate multilevel disc bulges causing mild central canal stenosis and moderate central canal stenosis at L4-5. (Tr. 337-338.)

The next record is from December 2014. Plaintiff was seen in the orthopedic clinic at St. Louis University Medical Center for low back pain. He was prescribed Ultram and Skelaxin, along with physical therapy. (Tr. 364-365.)

Mr. Jones was seen in the orthopedic clinic at St. Louis University Medical Center on five visits between March and November 2015. (Tr. 395-410.) On each visit, an exam showed an antalgic gait and a painful and reduced lumbosacral range of motion. Straight leg raising was negative, and motor strength was normal in the lower extremities. X-rays showed that the chronic compression fractures were unchanged compared to the April 2013 films. The diagnoses were compression fractures of the spine with routine healing, and chronic low back pain. The medical professional prescribed 800 milligrams of Ibuprofen. (Tr. 396-397.)

An MRI of the lumber spine was done in August 2015. This study showed old

non-retropulsed compression fractures from L1 to L5, with less than 25 percent height loss. There was no disc bulge at L1-L2. There was mild disc bulge with no central canal stenosis at L2-L3 and L3-L4. There was diffuse disc bulge at L4-L5 with mild central canal stenosis and moderate bilateral neural foraminal stenosis. (Tr. 409.)

At some point, Plaintiff reported that he ran out of Ibuprofen and took his girlfriend's Percocet. He asked for a prescription for Percocet, but the doctor told him to discuss narcotics with his primary care physician. (Tr. 401-402.) In October 2015, plaintiff complained of pain radiating into the left leg. The doctor recommended a series of three steroid injections. The first injection was administered in November 2015. (Tr. 404-406, 410.)

Plaintiff submitted additional records to the Appeals Council, which considered them in connection with his request for review. (*See* AC Exhibits List, Tr. 6.) The medical records at Tr. 417-422, designated by the Appeals Council as Exhibit 17F, were not before the ALJ. Accordingly, those records cannot be considered by this Court. *Stepp v. Colvin*, 795 F.3d 711, 721, n.2 (7th Cir. 2015).

### 4. Consultative Exam

Dr. Adrian Feinerman performed a consultative physical exam on October 1, 2013. (Tr. 351-362.) Ambulation was normal and plaintiff had a full range of motion of the spine. Muscle strength was normal throughout, with no muscle spasms.

### Analysis

The ALJ's discussion of the medical evidence relating to plaintiff's back condition is brief. After noting that radiographic and imaging reports confirm the presence of "multi-level mild to moderate degenerative disc disease of the cervical and lumbar spine," he gave the following

analysis:

> On examination, the evidence demonstrates antalgic gait (Exhibit 15F); however, on December 10, 2012, and October 1, 2013, he had normal gait and ambulation (Exhibits 6F and 8F). The evidence indicates decreased range of motion of the lumbar spine (Exhibit 5F, page 9 and 15F), but there is indication of normal range of motion on occasion (Exhibit 8F). The claimant's sensory and muscle strength were normal (Exhibits 6F, 8F, and 15F). The claimant received injections to treat his pain (Exhibit 15F, page 18).

(Tr. 19.)

While it is true that an ALJ is not required to discuss every piece of evidence in the record, it is well-established that an ALJ "may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

The ALJ's brief discussion omits any acknowledgement of the MRI evidence of old compression fractures in plaintiff's spine. The effect of those fractures is a medical judgment that this Court is not qualified to make. The compression fractures were first mentioned in the report of a CT scan of the lumber spine done at St. Louis University Medical Center on April 7, 2013. (Tr. 337-338.) Dr. Feinerman reviewed no medical records. (Tr. 315.) The first state agency consultant reviewed the record in October 2013; it appears that there were no records from St. Louis University Medical Center in the file at that time. (*See* Tr. 65-67.) A second state agency consultant reviewed the record in May 2014; there were records from St. Louis University Medical Center at that point, but it is unclear whether those records contained the April 2013 CT scan report. (*See* Tr. 78-81.) The second consultant did not mention the compression fractures. (Tr. 84-87). Thus, it appears that no medical expert has explicitly commented on the significance of the compression fractures.

More importantly, the ALJ failed to consider the evidence in a linear fashion. Instead, his analysis suggests that he considered evidence from 2012 to be of equal significance to evidence from 2015. Perhaps inadvertently, in summarizing the medical evidence he specified that the records showed normal gait and ambulation in 2012 and 2013, but not that the records that consistently reported antalgic gait and limited range of motion were from 2015. He also failed to mention that plaintiff complained of pain radiating into his leg for the first time in October 2015, and it was only after this new complaint that the doctor recommended steroid injections.

The Commissioner's brief argues, in essence, that the ALJ is not required to comment on every piece of evidence in the record. While that is correct, it is also true that an ALJ is not permitted to "cherry-pick" the evidence, ignoring the parts that conflict with his conclusion. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). While he is not required to mention every piece of evidence, he "must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000).

The amended alleged date of onset is Mr. Jones' 50th birthday. As the ALJ acknowledged at the hearing, if plaintiff is limited to sedentary work, he would be deemed disabled at age fifty under the Grids. (*See* Tr. 56-57.) The ALJ's failure to consider the medical evidence fully and to consider the records sequentially undercuts the evidentiary support for his conclusions.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal citations omitted). The ALJ fails to build the requisite logical bridge where he relies on evidence which "does not support the propositions for which it is cited." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir.

2011). The Court must conclude that ALJ Auble failed to build the requisite logical bridge here. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2010) (citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

Plaintiff also argues that the ALJ erred in failing to obtain a more current physical examination and an updated RFC assessment from a state agency consultant. Because remand is required anyway, the ALJ should consider on remand whether a current exam is appropriate.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Charles M. Jones' application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is **DIRECTED** to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: APRIL 10, 2018**

             *s/ J. Phil Gilbert*
             **J. PHIL GILBERT**
             **DISTRICT JUDGE**